PETER ORTH *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

November 25, 1891.

**Master and Servant — Proof Requisite to Connect Negligence and Injury.** — In an action to recover for personal injuries alleged to have been caused by the negligence of the defendant, it is not necessary to establish with absolute certainty the connection of cause and effect between the negligent act and the injury. It is sufficient if the evidence furnishes a reasonable basis for satisfying the minds of the jury that the act complained of was the proximate and operating cause. But this conclusion must not rest on mere conjecture. A recovery cannot be had where the evidence merely shows that it is possible that the injury was produced by a cause for which the defendant would be responsible, but more probable that it was produced by a cause for which he was not.

Appeal by defendant from an order of the district court for Stearns county, *Searle,* J., presiding, refusing a new trial after a verdict of $15,000 for plaintiff in an action for personal injuries.

*M. D. Grover,* for appellant.

*D. T. Calhoun* and *Theo. Bruener,* for respondent.

MITCHELL, J.  This action was brought to recover damages for personal injuries.  Plaintiff was employed by defendant as a locomotive fireman.  He and one Smith, as engineer, left St. Cloud in the morning upon an engine having attached a snow-plough in front and a caboose in the rear.  Their object and duty was to clear the track of snow.  They reached Fergus Falls between 3 and 4 o'clock in the afternoon.  After waiting there for a time, they started to clear the track on the Pelican branch to Elizabeth, a distance of about 10 miles.  They encountered considerable snow, and had made two or three stops, in or after passing through drifts, to get up steam. After passing through a large drift, and while running at the rate of from 25 to 30 miles an hour, and about 7 miles out from Fergus Falls, the engine "kicked,"—that is, the furnace door was blown open,—and flames, fire, etc., from the furnace burst into the cab with such force as to compel the plaintiff, the engineer, and Deveney, the road-master, who was also aboard, to jump out.  Deveney was not hurt, the engineer was killed, and plaintiff very seriously injured.  The engine, with the snow-plough and caboose attached, ran on until stopped in a snow-bank, about a mile and a half from the place of the accident.  No claim was made on the trial that the engine was defective.  The theory upon which the plaintiff tried and submitted his case in the court below, and the only one upon which he seeks to sustain his verdict here, is as follows:  *First,* that the engineer negligently allowed the engine to "work water," which means that he failed to close the injector when he ought to have done so, and thus permitted the boiler to fill with water, so that it overflowed into the dry pipe, and passed with the steam through the cylinder, and out of the exhaust nozzles into the smoke arch, and through the smoke-stack and netting; *second,* that this water, with the smoke, possibly aided by oil from the cylinders, clogged up the netting of the smoke-stack, so as to prevent the exhaust, etc., from escaping through the stack; *third,* that this forced it through the flues in the boiler into the fire-box or furnace with such force as to blow open the furnace door, and drive the flames and gas into the cab.  In order to find a verdict for the plaintiff, the jury must have

found his contention true as to all three of those propositions; and the only question is whether the evidence justified the verdict.

The evidence is altogether too voluminous to permit us to do more than to summarize it, and state certain general conclusions at which we have arrived after a careful perusal of the entire record. One peculiarity of the case is that, aside from the testimony of plaintiff himself and the witnesses who testified to the condition of the engine when found in the snow-bank after the accident, the evidence is mainly expert or opinion testimony, consisting largely of speculation or mere theory. The plaintiff testified that during the trip from Fergus to the place of the accident the engineer permitted the engine to work water. On his examination in chief he conveyed the idea that this was very frequent, although on his cross-examination he did not claim to have noticed it more than three or four times. He also testified that the engine was working water at the time of and immediately preceding the accident. It also appears from the testimony that, while this working of water is a very frequent occurrence, yet it is the duty of the engineer, when he discovers it, to shut off the water by closing the injector, for the reason that its effect is *to impede the progress of the engine,* and, if continued long enough, to injure the machinery and burst the cylinder. Certain witnesses testified that in their opinion this working of water would have a tendency to clog up the netting of the smoke-stack, but they admitted *that they had never in their experience known of such an occurrence.* They also testified that in their opinion such clogging, if it occurred, would be a *gradual process.* Other witnesses testified, not only that they had never known of such occurrence, but that, in their opinion, it could not occur from such a cause while an engine was moving at the rate of 25 miles an hour, with 130 pounds of steam, (as was this one at the time of the accident,) because, under such circumstances, the netting is very hot, and nothing will stick to it, and the force of the smoke would drive everything out. Certain expert witnesses testified to having, while operating locomotives, had this experience of the engine kicking, in some instances of about the same severity as this, and that in none of these cases was the netting on the smoke-stack clogged or obstructed.

It also appears quite conclusively from the plaintiff's own testimony *that the draft in the furnace was good and unobstructed up to and including the last time when he put in coal,* which was only a few seconds before the explosion. This would indicate pretty clearly that up to that time the netting was not materially obstructed, and if, as other witnesses testified, the process would be gradual, it could hardly have occurred in the few moments that subsequently elapsed. The plaintiff testified that he noticed after he put in coal the last time that no black smoke was coming out of the stack,—only some water. This is claimed to indicate that the netting was clogged. But, aside from the difficulty in understanding how smoke could not get out if water could, there was evidence tending to prove that there are two conditions in which black smoke (which is merely unconsumed carbon) may not appear,—one when none of the hydrocarbon gas, distilled from the coal, is consumed, because of the non-admission of oxygen to burn the hydrogen, in which case the gas will escape in an invisible form; the other, when all of the gas is consumed. The evidence also shows that when the engine was examined, about an hour and a half after the explosion, the coal in the furnace was not wholly burned out, but was black and dead on top; also that the netting was obstructed or clogged up, so that the fire would not burn until it was cleaned out, which was accomplished by two or three blows of a hammer. This is greatly relied on as showing that the netting was obstructed at the time of the accident. But, as against this, there was evidence tending to show that this obstruction of the netting might have been produced by cinders, ashes, etc., being driven into the netting by the explosion itself, or that it might have occurred after the accident, while the engine was standing in the snow-drift, from somewhat the same causes which often produce it after an engine is taken into the round-house. It is also urged that, if the clogging had been produced in the manner claimed by plaintiff, the obstruction would have been a gummy substance, closely adhering to the netting, which could not have been dislodged by two or three blows of a hammer.

Plaintiff's evidence also shows that the engine was being crowded a good deal, in order to get up steam enough to plough through the

drifts of snow, and that coal was being put in almost constantly; that within a minute and a half or two minutes before the explosion he had thrown in some five shovels full of coal at three different times, a considerable part of which, perhaps two-fifths, was fine coal; that there was a large amount of coal in the furnace at the time of the explosion, *which occurred immediately after the engineer threw forward the lever* in order to increase the exhaust, and thus increase the power of the engine.

. . All this points very strongly to the conclusion that the accident was the result of the explosion of hydrocarbon gas distilled from the combustion of the coal, which formed faster than it could either escape or be consumed, and that the immediate cause of the explosion, which is merely instantaneous combustion, was the sudden forcing of a large quantity of additional air through the grates into the firebox, by the engineer's throwing forward the lever to increase the exhaust.

While this statement is incomplete, and may be, in some details, not exactly accurate, yet we think it fairly and fully outlines the probative force of the evidence, taken as a whole. And the result, in our judgment, is that while it may justify the conclusion that the engineer was negligent in sometimes allowing his engine to work water when he ought not to have done so, and while there is a possibility that this might have clogged the netting, and that this clogging might have been the cause of the accident, it is a mere matter of conjecture, not rising to the dignity of proof. We have the presence of all the conditions which might have produced the same result, without the presence of the cause assigned by the plaintiff. We find the same thing has happened on other occasions, when no such cause existed, and it does not appear that in the experience of any one any such result ever occurred from that cause under like circumstances. We have also evidence pretty clearly establishing certain facts which it is very difficult, if not impossible, to reconcile with plaintiff's theory. In short, the condition in which the evidence leaves the case is that it is possible that the accident was produced by the cause suggested by the plaintiff, but that the probabilities are against it. The burden of proof was on the plaintiff to establish his contention; and

"proof" is logically defined as a sufficient reason for assenting to a proposition. It is, of course, not necessary to establish the connection between cause and effect with absolute certainty, for this is often impossible. Evidence furnishing a reasonable basis for satisfying the minds of the jury that the clogging of the netting, through the negligence of the engineer in the management of the engine, was the proximate and operating cause of plaintiff's injury, would have been sufficient. But this conclusion must not rest on mere conjecture. It is not even enough that the evidence leaves the matter *in equilibrio* as to whether the injury was produced by a cause for which the defendant was responsible, or by one for which it was not responsible; and *a fortiori* no recovery can be had if it is more probable that it was produced by the latter. In this case the evidence left the matter altogether too much in the domain of mere guess-work to furnish a reasonable basis upon which to rest the verdict. Taking the view of the evidence most favorable to the plaintiff, the question as to the operating cause of this accident was, in the expressive phrase of one of the witnesses, a "theoretical problem," left wholly to conjecture.

Order reversed.