[No. 1760]

## JAMES MURPHY, Respondent, *v.* SOUTHERN PACIFIC COMPANY, Appellant.

1. DAMAGES—NATURE—INJURIES TO PASSENGERS—LIABILITY.

    A passenger injured in a collision may only recover the damages which are the natural and proximate result of the injury sustained.

2. CARRIERS—CARRIAGE OF PASSENGERS—DUTY OF CARRIERS.

    A carrier of passengers must use the utmost care and diligence for their safety, and is liable for any injury to a passenger occasioned by the slightest negligence against which human prudence should have guarded.

3. CARRIERS—INJURIES TO PASSENGERS—NEGLIGENCE.

    The fact of a collision between two trains of a carrier of passengers resulting in injury to a passenger raises a presumption of negligence on its part which it must overcome.

4. DAMAGES—PERSONAL INJURY—BURDEN OF PROOF.

    The burden of proof of the nature and extent of a personal injury rests on plaintiff.

5. DAMAGES—PERSONAL INJURIES—QUESTION FOR JURY.

    Whether a particular disease results from a particular physical injury is for the jury, where the evidence tends to show that the disease followed the injury, and where there is expert testimony showing that the disease is one which might have been produced by the injury.

6. APPEAL AND ERROR—VERDICT—CONCLUSIVENESS.

    Where there is a substantial conflict of testimony on any material issue, the appellate court will not disturb the jury's finding thereon.

7. DAMAGES—PERSONAL INJURIES—EXCESSIVE DAMAGES—PASSION AND PREJUDICE.

    A passenger was injured in a collision and thrown against the seat in front of him, causing an injury to his leg. The evidence was conflicting on the issues whether varicose veins resulted from the injury or from the passenger's failure to take proper care of the injuries. He was 49 years old, and had a strong constitution, and had been engaged in mining for many years prior to the accident. There was evidence that he had suffered greatly and would continue to suffer. *Held*, that a verdict for $7,500 would not be set aside as excessive, in the absence of a showing that the jury were actuated by passion and prejudice — that is, anger, resentment, heat, absence of reflection, disregard of the rights of others, and kindred motives.

8. DAMAGES—PERSONAL INJURIES—CARE REQUIRED OF PERSON INJURED.

    One injured through the fault of another must use reasonable means to protect himself against any aggravation of the injury, and must do all things reasonably necessary to cure the injury, and cannot recover for any suffering or physical disability which could have been prevented by the use of reasonable precaution and attention in caring for the injury.

9. DAMAGES—PERSONAL INJURIES—MEASURE OF DAMAGES.

The liability of one inflicting a personal injury on another is confined to such sum as will justly compensate the latter for the injury received and the consequences that will naturally or probably result.

10. DAMAGES—PERSONAL INJURIES—LIABILITY.

Where a passenger hurt in a collision suffered from a physical disability which was aggravated by the injury, the carrier was liable for such an amount as would compensate for the aggravation of the previous disability, provided the passenger used reasonable care in treating the injury, and gave it such medical attention as in his best judgment it demanded.

11. APPEAL AND ERROR—VERDICT—CONCLUSIVENESS.

In an action for personal injuries negligently inflicted, the verdict of the jury is conclusive as to the existence of negligence and its effect as contributing proximately to the injury, unless the contrary conclusion necessarily follows from undisputed facts.

12. DAMAGES—PERSONAL INJURIES—EVIDENCE.

In an action for personal injuries, evidence *held* to justify a finding that the injuries received directly and proximately caused varicose veins, authorizing a recovery therefor.

13. DAMAGES—PERSONAL INJURIES—ISSUES—QUESTION FOR JURY.

The evidence to justify the submission to the jury of the issue whether a certain bodily condition complained of resulted from the injury should show the connection between the two with reasonable certainty, but evidence of good health prior to the injury and of suffering shortly thereafter not shown to be an impossible effect of the injury carries the question to the jury.

14. JURY—CHALLENGES—DISCRETION OF COURT.

The court has much discretion in ruling on challenges of jurors in a civil action, to the end that a fair, unbiased, and impartial jury may be secured.

15. JURY—COMPETENCY—BUSINESS CONNECTION—DISCRETION OF COURT.

While the mere fact that a juror has formerly been in the employment of one of the parties to the action does not alone disqualify him, the court may in its discretion sustain a challenge on believing that a fairer juror may be secured.

16. APPEAL AND ERROR—REVIEW—DISCRETION—RULING ON CHALLENGES OF JURORS.

A judgment will not be reversed because of rulings of the court on challenges of jurors, unless there has been a gross abuse of discretion.

17. APPEAL AND ERROR—HARMLESS ERROR.

Trifling errors not prejudicing the substantial rights of the complaining party will be disregarded on appeal.

18. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

Where in a personal injury action defendant admitted that plaintiff was injured in the accident, the error, if any, in admitting declarations made, by the person injured, about four minutes after the accident, to the effect that he had been injured, was not prejudicial.

19. APPEAL AND ERROR—REVIEW—DISCRETION OF TRIAL COURT—PHYSICAL EXAMINATION.

In an action for personal injuries, the rulings of the trial court in the exercise of its discretion in granting or denying a physical examination of plaintiff will not be disturbed in the absence of gross abuse of discretion.

20. DAMAGES—PERSONAL INJURIES—PHYSICAL EXAMINATION.

Plaintiff, suing for a personal injury, submitted to two examinations at different times by physicians of defendant. During the trial, the defendant asked for another physical examination, and plaintiff consented to an examination of the part of his body that was injured. *Held,* that the refusal of the court to direct that plaintiff submit to an examination of his entire body was not an abuse of its discretion.

21. WITNESSES—EXAMINATION—CROSS-EXAMINATION—SCOPE.

Where, in an action for injuries to a passenger in a collision, the trainmaster, as a witness for the carrier, testified that he did not see any passenger on the train who required a bandage, it was proper to permit plaintiff on cross-examination to show the authority of the witness and how thoroughly he examined the passengers, and as to whether settlements were made with other passengers.

22. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

Where, in an action for injuries to a passenger, the carrier admitted that plaintiff was injured and was entitled to a verdict of some amount, the error, if any, in permitting plaintiff to cross-examine a witness of the carrier as to settlements made with other passengers at the time plaintiff was injured, was harmless.

23. TRIAL—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.

It is not error to refuse a requested charge substantially covered by the instructions given.

24. DAMAGES—PERSONAL INJURIES—LIABILITY.

Where one already diseased has suffered from a personal injury, the mere fact of personal condition does not deny him all the damages suffered from the accident, and this is true whether the damages proximately result from the wrong complained of, or whether the disease existed at the time of the injury and was aggravated by it.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr,* Judge.

Action by James Murphy against the Southern Pacific Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Mack & Shoup,* for Appellant.

*Lee J. Davis* and *Sylvester S. Downer*, for Respondent.

By the Court, SWEENEY, J.:

This is an action instituted by plaintiff to recover $10,000 damages, $155 hospital and medical expenses, and $1.50 for surgical apparatus, claimed to be due plaintiff for certain injuries sustained while a passenger on one of defendant's trains on a railroad operated by defendant, December 22, 1906, at a place called Harney, in the County of Eureka, State of Nevada.

It appears undisputed from the evidence that plaintiff was a passenger upon defendant's train, being provided with a ticket, and that he received an injury as the result of a wreck on said line of road, being occasioned by a head-on collision between the passenger train upon which plaintiff was traveling and a freight train going in the opposite direction. The action was tried before a jury, which resulted in a verdict in favor of plaintiff for $7,500, and defendant appeals to this court from the judgment entered upon the verdict, and from the order denying defendant's motion for a new trial, basing said appeal upon the following grounds: (1) Excessive damages appearing to have been given under the influence of passion or prejudice; (2) insufficiency of the evidence to justify the verdict, and that it was against law; (3) errors in law occurring at the trial and excepted to by the defendant; and (4) newly discovered evidence, material for the defendant, which could not with reasonable diligence be discovered and produced at the trial. The grounds thus assigned will be treated in the order in which they are stated.

Subdivision 5 of section 195 of our civil practice act (Stats. 1869, p. 226, c. 112; Comp. Laws, 3290), which states the grounds upon which a new trial will be granted to a party claiming to be aggrieved, and which is seriously contended by appellant to warrant a new trial in the present case, reads: "Excessive damages appearing to have been given under the influence of passion or prejudice."

It has been admitted and conceded by the defendant that plaintiff was injured while a passenger on one of defendant's trains, and entitled to recover some damages. The admission

of this primary liability made by appellant is complete. It is contended, however, by the defendant that plaintiff is entitled only to recover such damages as are the natural and proximate consequence of the injuries sustained by the collision. Defendant contends that the only injury sustained by plaintiff as the result of the collision was an inconsequential bruise upon his left leg, which, with ordinary care and attention, would have healed without any appreciable injury to the plaintiff; and that the varicose veins, from which plaintiff is suffering, were brought on by septic poisoning that resulted from plaintiff's lack of care in the interim between the time of the accident and the time of trial. A further contention was made at the time of the trial that the plaintiff was suffering from varicose veins previous to the time of the accident, and, hence, that they were not the result thereof. The plaintiff as strenuously maintains that the varicose veins and injury, of which he is now suffering, resulted directly from the bruise or contusion received at the time of the collision, and were not caused by any act or omission of his own not directly attributable to the negligence of the defendant, and that prior to the accident plaintiff never suffered or was afflicted with varicose veins.

The law is so well settled that no damage can be recovered in suits of this character, where the damages are not the natural or proximate consequence of any injury sustained, that it needs no citation of authorities. We thoroughly agree with appellant that the damages which plaintiff is entitled to recover must be due to the natural and proximate consequence of the negligence of defendant, and that plaintiff cannot recover upon testimony adduced, based upon mere surmise, conjecture, or possibility. (*Puckhaber* v. *Southern Pacific*, 132 Cal. 365, 64 Pac. 480; *Welsh* v. *Erie Railway Company*, 181 Pa. 461, 37 Atl. 513; *Philadelphia* v. *Schertle*, 97 Pa. 450; *Stringert* v. *Ross Townsite*, 179 Pa. 614, 36 Atl. 345; *Grant* v. *Pennsylvania R. R. Co.*, 133 N. Y. 657, 31 N. E. 220; *Hannigan* v. *Lehigh R. R. Co.*, 157 N. Y. 244, 51 N. E. 992; *Orth* v. *St. Paul R. R. Co.*, 47 Minn. 384, 50 N. W. 363; *Wheelan* v. *Chicago Ry. Co.*, 85 Iowa, 167, 52 N. W. 119; *Atchison R. R. Co.* v. *Aderhold*, 58 Kan. 293, 49 Pac. 83; *Koslowski* v. *Thayer*, 66 Minn. 150, 68

N. W. 973; *Hughes* v. *Cincinnati R. R. Co.*, 91 Ky. 531, 16
S. W. 275; *Illinois Central R. R. Co.* v. *Cathy*, 70 Miss. 332, 12
South. 253; *Clare* v. *New York R. R. Co.*, 167 Mass. 39, 44
N. E. 1054; *Illinois Central R. R. Co.* v. *Jones*, 16 South. 300;
*Plefka* v. *Knapp Co.*, 145 Mo. 316, 46 S. W. 974; *Louisville
R. R. Co.* v. *McGary's Administrator*, 104 Ky. 509, 47 S. W.
440; *Wintuska* v. *Louisville R. R. Co.*, 20 S. W. 819, 14 Ky.
Law Rep. 579; *Pleasants* v. *Fant*, 22 Wall. 116, 22 L. Ed. 780.)

The law is also well established that a railroad acting in
the capacity of a common carrier of passengers is bound to
use the utmost care and diligence for the safety of the passen-
gers, and is liable for any injury to a passenger occasioned by
the slightest negligence against which human prudence and
foresight should have guarded. In the present case, the fact
that there was a collision of two of defendant's trains estab-
lishes a presumption of negligence on the part of defendant
in the operation of its trains, which presumption was not
rebutted or overcome by any evidence on the part of defend-
ant, and defendant must concede, as it frankly does, its lia-
bility for any injuries sustained by plaintiff directly resulting
from the collision. We thoroughly agree with counsel for
appellant that the burden of proof in establishing the nature
and extent of the injury resulting from the collision, as
alleged by plaintiff, rested upon the plaintiff.

With these principles of law in mind, the question pre-
sented resolves itself into a question of fact, as to whether or
not the injuries, alleged by plaintiff, were the direct or natu-
ral and proximate consequence of the accident at the time of
the collision, and, if so, whether the verdict of $7,500 dam-
ages, which was granted to plaintiff by the jury, can be con-
sidered excessive, and to have been given under the influence
of passion or prejudice. Thompson, in his Commentaries on
the Law of Negligence, vol. I, sec. 154, very aptly sets forth
the law applicable to the foregoing observation, and which is
particularly appropriate to the facts in the present case, as
follows: "Whether a particular disease is the result of a par-
ticular physical injury must, of course, be determined by the
jury as a question of fact, where the evidence tends to show
that the disease followed the injury, and where there is expert

testimony tending to show that the disease is one which might have been produced by the injury. It was so held with respect to an injury which was shortly afterwards followed by a cancer on the part of the body of the plaintiff which had been injured. So, if a physical injury, the result of negligence, leaves the constitution of the injured person in a broken and shattered condition, creating an increased susceptibility to a particular disease, and that disease follows, although after a considerable lapse of time, and death results from it, the person or corporation inflicting the injury may be liable, if, in the opinion of the jury, the injury, and the sickness and debility following it, concurred in and contributed to the attack of the particular disease which finally carried the injured person off."

It has been settled by numerous decisions of this court that, where there is a substantial conflict of testimony upon any material issue, the appellate court will not set aside the verdict of a jury.

1. A very careful examination of the testimony adduced at the trial leads us to the conclusion that there was sufficient material evidence produced for the jury on which to have based their verdict. It appears from the testimony that plaintiff is a miner and prospector by occupation, 49 years of age, and at the time of the accident was on his way from Butte City, Montana, to Goldfield, Nevada; that he had a rugged constitution, and was a strong and healthy man; that up to the time of the accident he had been engaged in mining for thirty-two or thirty-three years in California, Arizona, New Mexico, Idaho, Montana, and Old Mexico. On the day of the accident, in company with J. H. Cooper, he was seated in the smoking car of defendant's west-bound train, four or five seats from the front end, on the left-hand side, Mr. Cooper being seated on the opposite side of the car. Near Palisade defendant's train collided with a freight train at a siding. The force of the collision threw plaintiff against the seat in front of him, causing a contusion on his leg "which knocked the skin off of it; some places you could see the blood through it, and in other places kind of watery looking." An attempt was made by defendant to prove that plaintiff

had suffered from varicose veins before the accident; but plaintiff proved by many witnesses, who had known him for many years, had slept with him, worked with him, gone in swimming with him, and observed him for long periods of time, that he was not afflicted with varicose veins prior to the time of this accident.   In addition to this, Dr. Robinson, who treated the plaintiff, examined him minutely on many occasions, and performed an operation on the very limb that is now afflicted, testified there were no varicose veins on this limb until after the patient had left the hospital.

As to whether or not these varicose veins, of which plaintiff now suffers, were the direct result of the bruise or contusion received at the time of the collision, or whether they were brought on by plaintiff's own neglect, or from septic poisoning, a great deal of medical testimony was produced.   Five gentlemen of the medical profession were examined as witnesses, Dr. Robinson of Reno, on behalf of plaintiff, and Dr. Hood of Reno, Dr. Shields of San Francisco, Dr. Pinkerton of Salt Lake, and Dr. McKenzie of Reno, on behalf of the defendant, from all of whom expert testimony was exacted upon the causes likely to produce varicose veins, and as to whether or not the varicosity of the veins, from which plaintiff was suffering, was directly attributable to the accident or to septic poisoning, or neglect of plaintiff after the accident. Dr. Robinson states that when he examined plaintiff's limb, at the Clarendon Hotel, there was a large contusion on the side of his leg.   He also states that he saw the patient and his leg every day for a little over a month.   When asked whether a contusion would produce varicose veins, he replied that indirectly it would.

Dr. Hood, who has been employed as a physician for the Southern Pacific since 1892, was called as a witness for the defendant, and, when asked whether a failure to keep the wound absolutely clean had anything to do with varicosity, replied, "I cannot answer that question 'Yes' or 'No.'" After testifying with reference to the effect of veins that might follow a mild case of typhoid fever, which was shown plaintiff had in 1896, in answer to a hypothetical question, he said: "A. I would not attribute the varicosity to condi-

tions that had existed for so long a time, and, in the absence of other causes, I would attribute it to the effects of traumatism upon those deeper veins, as I suggested. Q. It would be almost a miracle, would it not, Doctor, if that varicosity should happen to appear at that time and the injury had nothing to do with it? A. It would be—— Q. Rather remarkable? A. Unreasonable to believe." "Traumatism" is a word derived from the Greek, and means "of or pertaining to a wound," and may, according to Dr. Hood, produce varicosity.

Dr. Hood further testified as follows:

Q. Did you say that, in contusions of the leg, varicosity will not appear as a result thereof? A. I do not think I said that to that extent.

Dr. John Wilson Shields, a physician of high standing, as is disclosed by the following testimony, testified as follows:

Mr. Shoup—Doctor, will you please state your full name? A. John Wilson Shields.

Q. Where do you reside, Doctor? A. San Francisco.

Q. What is your profession? A. I am a physician.

Q. How long have you followed that profession? A. Fifteen years.

Q. Are you a graduate of any medical colleges, or hospitals, or institutions of learning? A. I am.

Q. Please state what they are. A. I was educated in the University of Edinburgh; I hold a licentiate of the Royal College of Physicians and Surgeons of Edinburgh, and of the Royal College of Physicians of Glasgow. These are my qualifications.

Q. What, if any, medical positions have you held, Doctor, during your professional practice? A. I have held the position of medical officer to the dispensary. I have been the senior clerk to the Royal Infirmary of Edinburgh in the outdoor department. I am at present professor of medicine in the San Francisco Polyclinic, at one time the post-graduate department of the University of California. And I am a lecturer in therapeutics in the University of California.

Q. During your professional studies and practice, Doctor, have you had any occasion to either diagnose or treat that

condition of the body which is called 'varicosed condition,' or 'varicosed veins'?   A. Very frequently I have had to use varicosity of the veins as a sign of considerable consequence in coming to a diagnosis.

Q. Can you state, Doctor, what are the cause or causes of varicose veins?   A. I think I can state them—a number of causes of varicose veins.

Q. Please state them.   A. In the first place, varicose veins are of considerable interest to the profession at large on account of the fact that no very definite cause, or, you might say, one definite primal cause, can be given.   And this one is no doubt the result of the fact that a great number of people suffer from an inherent weakness in their veins which creates before a very long time a condition of chronic venous congestion, which is a predisposing cause to varicose veins or varicosity of the veins generally.   That is one particular cause. Other causes would come under the large head of 'pressure.' That is, preventing the flow of blood reaching the heart.   It must be kept in mind that the flow of blood in veins is very sluggish, and that its onward flow depends a great deal more upon muscular contraction and relaxation of the muscles than really upon the heart itself.   Again, the heart has a sort of aspirating action of pulling in the blood along the veins which hasn't a very strong influence and which is subject to external—which hasn't a very strong influence and which is subject to external influences in a very marked way.   Therefore, you can see why pressure of any kind, from the simplest kind of pressure to the most severe kind of pressure, will bring about varicose veins.

It appears from the testimony of this eminent physician, and his testimony is not disputed by any of the other medical experts called in this case, that varicosity can be produced from pressure on the veins, and evidently the jury in considering the accident, after hearing all of this testimony, concluded that the varicosity from which plaintiff was suffering was due directly to the contusion which resulted to him at the time of the accident, and not from any negligence on his part.

Dr. Shields further testified as follows:

Q. Where would varicose veins probably appear, if they followed a contusion? A. They would appear below the surface of the contusion, I imagine.

Q. They would appear in the neighborhood of the contusion, would they? A. Below it and near it, of course.

Q. And would'nt they gradually extend—probably? A. Yes, those would not extend so much, but other vessels would take up their work and be dilated, though they would not necessarily be varicosed.

Q. Isn't it a tendency of that complaint to grow as the man grows older, and get more and more inflamed, and finally very seriously? A. Yes; he will have varicose veins in the other leg.

It is true that there was some medical testimony introduced tending to show that plaintiff's present condition was due in part to his negligence in caring for the wound. But these questions of fact, under our system of jurisprudence, are for the jury to determine.

Section 12 of article VI of our Constitution reads as follows: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."

The court, we believe, very fairly instructed the jury, and protected the interests of the defendant, in the following instructions:

"The jury are instructed that, while defendant admits that plaintiff received a slight bruise while a passenger upon one of its trains, it denies that plaintiff sustained any damage or injury beyond such slight bruise; and the jury are instructed that as to all matters in dispute between plaintiff and defendant as to the nature and extent of plaintiff's injuries, and as to the damage, if any, resulting therefrom, the burden of proof is upon the plaintiff. In other words, plaintiff must establish to your satisfaction by a preponderance of evidence the truth of all things which are alleged to exist by him and which are denied by defendant. If, therefore, you should believe from the evidence that the plaintiff received a bruise or abrasion caused by a collision between two of the defendant's trains while plaintiff was a passenger upon one of such trains, but the plaintiff has failed to establish by a prepon-

derance of the evidence to your satisfaction that the injuries which he is now suffering from are the direct result of such bruise, without any intervening cause brought about by his own want of reasonable care and attention, your verdict should only assess such damages as you may think just and proper for the bruise or abrasion received by plaintiff while upon the train, and should exclude all other damages based upon or resulting from any injury that plaintiff may now have."

"The jury are instructed that, where a person becomes injured through the fault of another, it is the duty of the person receiving the injury to use reasonable means and care to protect himself against any aggravation of the injury, and to do all things reasonably necessary to cure such injury; and if the jury believe from the evidence in this case that any injury received by the plaintiff while a passenger upon one of the defendant's trains was not serious, or of great extent at the time of receiving the injury, but that the wound received by plaintiff while such a passenger became infected as a result of the lack of reasonable precautions and care on the part of plaintiff, and such infection has caused said injury or wound to become greater, and plaintiff's leg to have become more incapacitated than it would otherwise have been, then, and in such event, defendant cannot be held liable in damages to plaintiff for any injury or suffering or physical disability on the part of plaintiff, which plaintiff could have prevented by the use of reasonable precautions and attention in caring for such wound and injury, but the liability of defendant must be confined to such sum in damages as would justly compensate plaintiff for the injury received while upon the train, and the consequences that would naturally or probably result if such injury had received reasonable attention, and plaintiff had used ordinary care to effect a cure thereof."

"The jury are instructed that if they believe from the evidence that, previous to the accident complained of, the plaintiff was suffering from varicose veins in the left leg, or from any other physical disability, and that his previous physical disability was aggravated by want of ordinary care upon his part in attending or caring for any injury received by him

while a passenger upon one of defendant's trains, the plaintiff is not entitled to recover from the defendant any damages because of such aggravation of his previous physical disability."

"The jury are further instructed that if they believe from the evidence that, previous to the accident complained of, the plaintiff was suffering from varicose veins in the left leg, or from any other physical disability, and that such varicose veins or physical disability were aggravated by the injury complained of, and that the plaintiff used reasonable care in attending and treating said injury, then the plaintiff would be entitled to recover such an amount as would compensate him for the aggravation of the previous disability through the injury received. And, in determining whether the plaintiff used reasonable care, you are instructed that reasonable care is such care as a person of ordinary intelligence and prudence would use under the circumstances of the case."

With the evidence adduced and the instructions to the jury, it became their duty to assess such damages as they believed plaintiff entitled to, and while it was their privilege to assess the damages at such sum as they believed proper under the pleadings, even to the full amount claimed by plaintiff, they saw fit to cut the damages claimed by plaintiff from ten thousand odd dollars to seven thousand five hundred dollars. There is no testimony or showing that they were actuated by prejudice, or that they were influenced by passion. These words mean anger, resentment, heat, absence of reflection, disregard of the rights of others, and kindred motives. As was said in the case of *Clark* v. *Bennett*, 123 Cal. 275, 55 Pac. 908, "his care or want of care was a fact to be determined from all the circumstances surrounding him at the time." "It was for the jury to determine what would have been the conduct of a person of ordinary prudence under the circumstances of the case, as well as to determine whether or not the facts show negligence. The verdict of the jury is conclusive, both as to the existence of negligence and its effect as contributing proximately to the injury, unless a contrary conclusion necessarily follows from undisputed facts."

(*Schneider* v. *Market St. Ry. Co.*, 134 Cal. 488, 66 Pac. 734.)
"In considering as a question of law the relative negligence
of plaintiff and defendant, and the conduct of either or both
as contributing to the injury, an appellate court will assume
that the jury took any view of the facts, justified by the evi-
dence, which tends to support the verdict.    The same rule
holds good as to the findings of fact by the court where a jury
is waived.    So considered, the evidence in the case at bar
clearly sustains the finding of the court that plaintiff was not
negligent." (*Scott* v. *San Bernardino Co.*, 152 Cal. 604, 93 Pac.
677.)    If the fact be, as found by the jury, that due to this
accident plaintiff has undergone the great suffering which
there is testimony to show he has suffered and will likely
suffer the remainder of his life, we do not believe that $7,500
is an excessive judgment.

2.    The second assignment of error of appellant, that "the
evidence is insufficient to justify the verdict and that it was
against law," we believe to be thoroughly disposed of with the
view we have taken of the first assignment, and believe that
the evidence adduced at the trial, the authorities cited, and
the law as given in the instructions of the court were sufficient
to justify the jury as a basis for their verdict.    We fully agree
with attorney for appellant that the following rule of law, as
stated in 13 Cyc. 216, and which reads as follows, is a correct
rule: "The evidence, to justify a court in submitting to a jury
the question of whether or not a certain bodily condition com-
plained of is the result of the injury, should show the connec-
tion between the two with reasonable certainty, and not leave
it to vague speculation or conjecture.    It may be said, how-
ever, that evidence of good health prior to the injury, and of
suffering or ailment immediately or shortly thereafter, which
are shown by competent testimony to be reasonably imputed
to it, and are not shown by expert testimony to be an impos-
sible effect of the injury, is sufficient to carry the question to
the jury." We disagree with appellant's contention that there
was no testimony adduced sufficient to show that the varicose
veins of which plaintiff is suffering could be produced from
such a contusion or bruise as was inflicted on plaintiff by the

negligence of the defendant, or that there was no evidence which tended to show that these varicose veins did result from the contusion received at the time of the accident.

Conceding that plaintiff, immediately after the accident, did not take the best of care and did not secure the best medical assistance in the treatment of the wound, it does not follow that he is to be deprived of damages because of his failure to secure attention to the degree of care named. Evidence was disclosed that he used his best judgment in caring for the wound received at the time, and that he gave it such medical attention as he believed it was entitled to. Where there is such a disagreement of medical opinion as to what might cause varicosity of the veins, it would be more than presumption to expect a common layman to believe that from a contusion the serious consequences of which he is now suffering could follow. The evidence preponderates to the effect that at the time of the accident plaintiff was not afflicted with the malady affecting the limb in question, but it does appear that shortly thereafter varicose veins appeared and caused plaintiff the intense suffering and injury of which he is now complaining. Every man is differently constituted physically, and what might affect one individual might not have any damaging effect on the other. And so the jury in the present case, after listening to the medical testimony introduced, and all the evidence and facts adduced, believed, in their judgment, that these varicose veins were directly attributable to the accident occasioned by the negligence of the defendant.

Innumerable authorities can be produced where persons, through neglect, have brought on different diseases, and in many cases death, which are manifestly not attributable to an accident. But in the present case we believe the evidence justified a verdict of the jury believing that varicosity could and did affect plaintiff as a direct result of the injury complained of. Every case of this character, as has been well said on numerous occasions by courts considering questions such as the one under discussion, must be governed and controlled by the particular facts of each case. The rule we quoted from Thompson, in treating the first assignment of

error of appellant, together with the following authorities, and which can be increased to a great number if it were necessary, correctly state the law as to the amount of care a plaintiff, in a suit for damages, must exercise without being deprived of the right to recover damages, which resulted through injuries received from an accident which may have become aggravated thereafter.

"A railroad employee was wrongfully injured in an accident, and afterwards, by mistake, poison was given him sufficient to cause the death of a well man, from the immediate effects of which he died.  There was evidence tending to show that the injuries received were mortal, and that they caused him to succumb more quickly to the poison than if he had been well.  *Held*, that his personal representatives had a right of action against the railroad company, under Code 1886, sec. 2591, giving such an action when the injury 'results' in death." (*Thompson* v. *Louisville & N. R. Co.*, 91 Ala. 496, 8 South. 406, 11 L. R. A. 146.)

"Where one is injured by the negligence of another, and the injury renders the system more susceptible to disease and less able to resist it, and death results from such disease, such death is legally attributable to such negligence." (*Terre Haute & I. R. Co.* v. *Buck*, 96 Ind. 346, 49 Am. Rep. 168.)

"Defendant's liability, in an action for causing death by negligence, does not cease because the injured person did not adopt the best remedies or follow implicitly the directions of his physician." (*Texas & St. Louis Ry.* v. *Orr*, 46 Ark. 182.)

"The fact that a person injured is unskillfully treated, and this contributed to his death, is no defense to an action for damages for causing his death." (*Nagel* v. *Missouri Pac. Ry. Co.*, 75 Mo. 653, 42 Am. Rep. 418.)

"The fact that a person did not send for a physician until some time after the accident had occurred was held proper evidence of contributory negligence to go to the jury, but not conclusive." (*Osborne* v. *City of Detroit*, 32 Fed. 36.)

"Plaintiff can recover for impaired physical ability, pain, and suffering unavoidably incurred, even though it is increased by want of proper care and medical attention." (*Cameron* v. *Vandegriff*, 53 Ark. 381, 13 S. W. 1092.)

3.    Appellant assigns as error the action of the trial court in sustaining the challenge of plaintiff to the juror Hall, upon the ground that prior to the commencement of this suit said juror had been in the employ of the defendant.    It appears from the transcript that the juror had been in the employ of the Southern Pacific for fifteen years, and was in such employ at the time the accident took place, engaged as a telegraph operator in the company's office at Reno.    The juror testified that he did not remember of having heard of the accident, and formed no opinion as to the merits of the case.    Counsel for plaintiff, however, insisted that he be excused, and the court allowed the challenge.    While it is true that the mere fact that a juror has been in the former employment of one of the parties to an action, where he is an otherwise competent juror, is no disqualification (*Swope* v. *Seattle*, 36 Wash. 113, 78 Pac. 607; *East Line R. R. Co.* v. *Bricker*, 68 Tex. 500, 3 S. W. 99), yet it is further true that the court, as a trior of challenges is given a great deal of discretion in allowing or disallowing challenges, to the end that a fair, unbiased, and impartial jury may be secured.    (12 Am. & Eng. Ency. Law, p. 360.)    Counsel for plaintiff contends that it would be unfair for a juror to sit at the trial who was an employee of the company at the time the accident took place, and who had for fifteen years been in its service.    While we agree with counsel for appellant that he could be an employee of the company, and, not otherwise disqualified, be a competent juror, yet the court, in the exercise of that broad discretion given it under the law in the selection of a jury, believed, possibly, that a fairer juror could be secured, and, in view of the insistence of plaintiff's counsel to have him excused, we think very properly excused the juror.    In cases of a civil character, the authorities are practically uniform in holding that, by reason of the large discretion reposed in the trial judge in determining challenges, a judgment will only be reversed where it is shown that there has been a gross abuse of such discretion. In the present case it is not denied but that a fair and impartial jury was afterwards secured, and that was all defendant could demand.    (*Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 646, 6 Sup. Ct. 590, 29 L. Ed. 755; *United States* v. *Cor-*

*nell*, 2 Mason, 104, Fed. Cas. No. 14,868; *Heaston* v. *Cincinnati & Fort Wayne R. R. Co.*, 16 Ind. 275, 279, 79 Am. Dec. 430; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Franklin*, 23 Kan. 74; *Carpenter* v. *Dame*, 10 Ind. 125; *Morrison* v. *Lovejoy*, 6 Minn. 349, 350.)

4. We do not believe there is any merit in appellant's fourth assignment of error to warrant this court in reversing this case. Appellant contends that the trial court erred in overruling defendant's objection to the question asked the witness Cooper as to whether the plaintiff had made any statement to the witness that he had been hurt or injured, after plaintiff and the witness had left the train. It appears from the transcript of testimony that the witness Cooper, who was traveling with plaintiff at the time of the accident, testified that about four minutes after the accident he asked plaintiff whether he was hurt, and plaintiff answered the question, "Yes, that he had hurt his leg." It is not contended that plaintiff made any statement to show the extent of his injuries, or that his injury was severe, or that it was likely to be permanent or liable to produce any serious results. He simply stated that which the defendant has all along admitted—that plaintiff was injured in the accident. If there was any error in the admission of this simple declaration that he hurt his leg, it was error without prejudice. This court has repeatedly decided that, if trivial errors are committed by the trial court which do not prejudice the substantial rights of the complaining party, they will be disregarded, and this is the universal rule throughout the United States and England. Entertaining this view of the assignment of error, we do not believe it is necessary to take up the contention of counsel in passing upon the question of whether it was or was not such testimony as could be introduced under the doctrine of *res gestæ*.

5. Appellant contends that the lower court erred in denying the request of defendant for an order compelling plaintiff to submit to a physical examination by two physicians, one to be selected by plaintiff and one by defendant. The record discloses that this case came on for trial September 12, 1907; that the plaintiff was examined by defendant's physicians on

two different occasions, once in April, 1907, and the other about May 25th. On the 13th day of September, 1907, after the plaintiff had taken the stand and given his testimony, and been subjected to a most rigorous and searching cross-examination by counsel for appellant, which consumed several hours, and in which his entire life for more than twenty years had been laid open before the jury, counsel for appellant suggested that another examination was desired of the plaintiff. After considerable discussion between counsel, plaintiff's counsel consented that Dr. Shields, a witness subpenaed on behalf of the defendant, might examine the two limbs of the plaintiff, but they would not permit any further examination to be made. Defendant's counsel insisted on its right to have Dr. Shields make a thorough examination of the entire body of the plaintiff, which was objected to by counsel for plaintiff. Thereupon defendant's counsel formally moved the court for an order permitting Dr. Shields to make a physical examination of plaintiff, and that plaintiff have such physicians as he may desire present at the time of the examination. Counsel for plaintiff resisted the motion, but offered to permit a complete examination of the plaintiff by two disinterested physicians to be appointed by the court. Defendant's counsel said they would consent to any physician that the court might appoint to examine plaintiff, but would like to have Dr. Shields make an examination of the plaintiff. Thereupon the court made the following order:

The Court—The last examination was made more than three months ago, and if the contention of counsel is correct—and I am inclined to think it is—that the defendant has the right to examine him for the purpose of knowing his present physical condition. Now, this is the conclusion that I have come to: I am going to make an order that each party may select one physician to give the plaintiff a physical examination at some hour which may be agreed upon by the parties at this date, and that if the plaintiff refuses to subject himself to such examination, that the examination shall not be made. As I understand, this is to be an examination of his entire body. If the plaintiff refuses to subject himself to the examination, the examination shall not be made. If he does not

object, the examination may be made by two physicians, one to be selected by each of the parties, and the examination may be in the presence of the attorney or attorneys of each party if they desire to be present.  Proceed with the examination.

Mr. Shoup—Q. Are you willing to submit to an examination now, Mr. Murphy?

The Court—He will probably want to consult with his attorneys before answering that.  You need not answer that, Mr. Murphy, at this time.

Subsequently, the following proceedings occurred:

The Court—You may proceed.  Are you ready to proceed?

Mr. Shoup—If your honor please, I believe that yesterday afternoon an order was made that the plaintiff be subjected to an examination by physicians, one to be selected by each side, but that the court also specified in its order that, if the plaintiff refused to submit to the examination, you would not compel him to do so.  And I would like to ask counsel at this time if they are prepared to let us make that examination, or do they refuse?

Mr. Downer—We decline any further than as offered.

Mr. Shoup—Then, if your honor please, we will ask for an order compelling the plaintiff to submit to such examination.

The Court—I think, Mr. Shoup, that if I make an order compelling him to submit to the examination it would be only to the extent of confining him to the lower limbs of the plaintiff.

Mr. Downer—We concede that right now.  There is no necessity of making an order of that kind.

Mr. Shoup—If your honor please, our position is that such an examination of the lower limbs is not sufficient.  And we shall ask for an order permitting our physicians to make such examination as in their judgment as physicians may be necessary; of course, with all due regard for the convenience of the plaintiff, and without any undue deprivation of his rights, by reason of modesty or otherwise.

The Court—Well, in making the modified order that I did yesterday, I did it feeling that I did not have the right, as a court, to order that any person be entirely stripped of their

clothing and examined; that that was a privilege that they would have the right to reserve to themselves. But I do think that I have the right to make an order that the lower limbs where the wound or alleged wound was made—to order that he submit to an examination of that portion of his body.

Mr. Shoup—But your honor is of the opinion that you have no right to make an order requiring him to submit his entire body to an inspection?

The Court—Well, I am in doubt whether any court has a right to order that or not. For that reason, I made the modified order reserving to the plaintiff the right to refuse to submit to the examination.

Mr. Shoup—Then, if your honor please, I desire to enter an exception to the ruling of the court upon the ground that the defendant in this case has a right to make such examination of the person of the plaintiff as its physician or physicians making the examination may be advised, and that the refusal of the court to make such order upon the ground that it has no authority to do so is an error to which we desire to take an exception, upon the grounds stated.

The Court—Of course, if the plaintiff is willing to consent, which I understand that he is not; is that the case, Mr. Downer?

Mr. Downer—Of course; I stated my position yesterday, and I adhere to everything I said. We wish it to be made a part of the record at this time that the lower extremities, both of them, at this time will be open to the inspection of the physicians; or the other offer, that this court appoint physicians.

The Court—You consent that that order be made?

Mr. Downer—You do not have to make an order for a physician to examine his lower extremities, because we consent to that. There is no need of asking for an order of that kind.

Mr. Mack—Do I understand, may it please your honor, that your honor has ruled that you will not make an order requiring the plaintiff to submit to an examination at the hands of our physicians so that they may have a chance to determine his heart action and other matters leading up to this trouble?

The Court—I refuse to make an order, as I indicated a few minutes ago, and as I said yesterday.

Mr. Mack—Then we would like the benefit of an exception upon the grounds stated by Mr. Shoup, a few moments ago.

The Court—Note the exception.

After a very thorough and careful investigation of the authorities presented upon this interesting assignment of error, and while there appears to be a great contrariety of opinion, yet we find that the great weight of authority is to the effect that the trial courts have the right to exercise this power, and such power is vested in the sound discretion of the trial judge, and, if he grants or denies an examination, such action on his part will not be reversed unless it discloses a gross abuse of such discretion.  (*Shepard* v. *Mo. Pac. Ry. Co.*, 85 Mo. 629, 55 Am. Rep. 390; *Sidekum* v. *Wabash R. R. Co.*, 93 Mo. 400, 4 S. W. 701, 3 Am. St. Rep. 549; *Owens* v. *Kansas City Ry. Co.*, 95 Mo. 169, 8 S. W. 350, 6 Am. St. Rep. 39; *Schroeder* v. *Chicago Ry. Co.*, 47 Iowa, 375; *Alabama G. S. R. Co.* v. *Hill*, 90 Ala. 71, 8 South. 90, 9 L. R. A. 442, 24 Am. St. Rep. 764; *King* v. *State*, 100 Ala. 85, 14 South. 878; *Sibley* v. *Smith*, 46 Ark. 275, 55 Am. Rep. 584; *St. L. S. W. R. Co.* v. *Dobbins*, 60 Ark. 481, 30 S. W. 887, 31 S. W. 147; *Richmond & D. R. Co.* v. *Childress*, 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808, 14 Am. St. Rep. 189; *South Bend* v. *Turner*, 156 Ind. 418, 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200; *Pens Co.* v. *Newmeyer*, 129 Ind. 401, 28 N. E. 860; *Hall* v. *Manson*, 99 Iowa, 698, 68 N. W. 922, 34 L. R. A. 207; *A. T. & S. F. Ry. Co.* v. *Thul*, 29 Kan. 466, 44 Am. Rep. 659; *City* v. *Guilliland*, 63 Kan. 165, 65 Pac. 252, 88 Am. St. Rep. 232; *A. T. & S. F. Ry. Co.* v. *Palmore*, 68 Kan. 545, 75 Pac. 509, 64 L. R. A. 90; *Belt Electric L. Co.* v. *Allen*, 102 Ky. 551, 44 S. W. 89, 80 Am. St. Rep. 374; *Graves* v. *Battle Creek*, 95 Mich. 266, 54 N. W. 757, 19 L. R. A. 641, 35 Am. St. Rep. 561; *Hatfield* v. *St. Paul & D. R. Co.*, 33 Minn. 130, 22 N. W. 176, 53 Am. St. Rep. 14; *Wanek* v. *Winona*, 78 Minn. 98, 80 N. W. 851, 46 L. R. A. 448, 79 Am. St. Rep. 354; *Stuart* v. *Havens*, 17 Neb. 211, 22 N. W. 419; *Sioux City & P. R. Co.* v. *Finlayson*, 16 Neb. 578, 20 N. W. 860, 49 Am. Rep. 724; *Brown* v. *C. M. & St. P. R. Co.*, 12 N. D. 61, 95 N. W.

153, 102 Am. St. Rep. 564; *Miami & M. T. Co.* v. *Baily*, 37 Ohio St. 104; *Hess* v. *Lake Shore & M. S. R. Co.*, 7 Pa. Co. Ct. R. 565; *Lane* v. *Railway Co.*, 21 Wash. 119, 57 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821; *White* v. *Milwaukee City R. Co.*, 61 Wis. 536, 21 N. W. 524, 50 Am. Rep. 154; *O'Brien* v. *La Crosse*, 99 Wis. 421, 75 N. W. 81, 40 L. R. A. 831; *Western Glass Mfg. Co.* v. *Schoeninger*, 42 Colo. 357, 94 Pac. 342.)

A contrary doctrine has been announced in Illinois (*Parker* v. *Enslow*, 102 Ill. 272, 40 Am. Rep. 588) and in Montana (*May* v. *Northern Pacific R. R. Co.*, 32 Mont. 522, 81 Pac. 328, 70 L. R. A. 111), and in many early decisions of New York, but the later opinions in New York all hold the opposite to these opinions, due partially, if not totally, to statutory enactments made in order to overrule these particular cases. The Supreme Court of the United States in *Union Pac. R. Co.* v. *Botsford*, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, has denied this right to exist in federal trial courts.

We think that the reasons and principles advanced in those opinions, which sustain the power of the trial court to order a physical examination in cases of this character, and which reposes such power in the sound discretion of the trial court, are sound in law and in furtherance of the ends of justice. In the present case, we believe the evidence discloses that defendant was accorded every privilege of examination to which it was entitled. The purpose of allowing this examination is to prevent a defendant from being subjected to fraudulent, assumed, and dishonest claims, and we believe that the defendant should be protected in every way from any imposition which may be perpetrated by plaintiffs in suits of this character against them. The plaintiff in this case voluntarily submitted to a most thorough and searching examination by Dr. Hood, one of defendant's physicians, with full liberty to extend his examination to such extent as he desired. After this examination another application was made by the defendant to have the plaintiff examined by Dr. Pinkerton, another of defendant's medical experts, who came from Salt Lake to Reno, Nevada, for that purpose, and again plaintiff submitted to a second examination. Again appellant

asked, during the middle of the trial, for another examination, and the court, under its fair and impartial offer and ruling, we think, did all that was necessary to do, and the action of the court complained of in this assignment of error, under all the circumstances of the case, does not disclose any abuse of discretion prejudicial to the rights of the defendant. There is a limit to everything, and unless this power, which is vested in the sound discretion of a trial court for the purpose of promoting the ends of justice, is so reposed, we can see where prejudicial errors could happen to plaintiff by the evidence of a defendant, if it could and had the power to compel limitless examinations in the hope of securing some medical expert who might agree with some theory, character of disease, or injury contended for by defendant, and where this power, which is for the purpose solely of ascertaining the truth, could be so distorted as to prove an engine of destruction to plaintiff's rights in the hands of unscrupulous or dishonest defendants.

6. Appellant's sixth assignment of error, wherein it is alleged that the lower court erred in overruling defendant's objections to the questions asked defendant's witness, Wright, on cross-examination, as to whether settlements were made with other passengers at the time plaintiff claimed to have been injured, we believe is insufficient in merit to warrant any reversal of this cause. The witness Wright, called on behalf of the defendant, was trainmaster for the Southern Pacific, and on his direct examination was questioned as to his duties as trainmaster. Among others, the following questions were asked the said witness on his direct examination by counsel for defendant: "Q. You may state to the court and jury, Mr. Wright, the condition of any persons there who were injured, so far as their injuries went, that you personally talked to or investigated in a general way as to the extent of their injuries, whether they were severely injured or slightly injured. A. Oh, I didn't see a passenger on the train that required a bandage or a piece of court plaster." On cross-examination, counsel for plaintiff questioned said witness Wright as to his authority as trainmaster, and his various duties, and among other questions, as to how thoroughly he

examined the passengers on the train who were hurt, he having testified on his direct examination that he did not see a passenger on the train who required a bandage or a piece of court plaster. We believe it was proper cross-examination to test the memory of the witness and to ascertain the truth, and the court did not err in permitting the testimony brought out. Anyway, the defendant in this case admits that the plaintiff was injured, and further admits that the jury was entitled to return some verdict for the plaintiff; but, even admitting, for the sake of argument, that these questions might not have been thoroughly proper, if it was any error at all, it was of such a harmless nature as not to prejudice the rights of the defendant.

7, 8. The seventh and eighth assignments of error of appellant, wherein it is alleged that the court erred in shutting out certain evidence of a hypothetical nature of Dr. Shields and Dr. Hood, witnesses called on behalf of the defendant, we believe, after a careful review of the testimony given by these gentlemen, to be without merit. (*In re Mullin's Estate*, 110 Cal. 254, 42 Pac. 645; *Rush* v. *Megee*, 36 Ind. 69; *Louisville N. A. & C. R.* v. *Falvey*, 104 Ind. 409, 3 N. E. 389, 4 N. E. 908; *Louisville N. A. & C. R. Co.* v. *Wood*, 113 Ind. 544, 14 N. E. 572, 16 N. E. 197; *Bever* v. *Spangler*, 93 Iowa, 576, 61 N. W. 1072; *Howes* v. *Colburn*, 165 Mass. 385, 43 N. E. 125; *Harris* v. *Schuylkill River E. S. R. Co.*, 141 Pa. 242, 21 Atl. 590, 23 Am. St. Rep. 278; *Foster's Executors* v. *Dickerson*, 64 Vt. 233, 24 Atl. 253.)

9. Appellant assigns, as further error committed by the trial court, its refusal to give the following instruction:

"If the jury believe from the evidence that the plaintiff, while a passenger upon one of defendant's trains, received a bruise or abrasion upon the left leg, and such bruise or abrasion injured or removed the skin upon plaintiff's leg to the extent of about two inches in length and an inch or more in width; that such bruise or abrasion caused some pain at the time, but did not interfere with plaintiff walking about; that there was at the time of said accident upon said train a physician who was ready and willing to attend and render service to all persons injured, and that, before the train upon which

plaintiff was a passenger resumed its journey, the defendant also secured the attendance of physicians for the purpose of attending and aiding persons injured upon said train, of which plaintiff had knowledge; that plaintiff made no effort to secure the services of any of such physicians; that thereafter plaintiff came on to Reno, Nevada, where he remained for a couple of days; that thereafter he continued his journey on to Tonopah, and thence on to Goldfield, thence back to Tonopah, and then returned to Goldfield, where he began work as a miner underground, and continued in such work for the period of four days, and until his leg became so swollen that he was confined to his bed; that, from the time of the receiving of such bruise or abrasion, said wound and injury was more or less painful, but that, from the time of the receiving of said injury up to the time that he was confined to his bed in Goldfield, the plaintiff did not seek medical advice or wash or cleanse or bandage said wound, and that there was nothing to prevent him from doing so, and that as a result of the failure to obtain medical assistance, or to bandage or cleanse or wash said wound, the same became infected, and that, as a result of such infection, pus to the extent of half a pint gathered in said wound and rendered an operation necessary—then I instruct you that, as a matter of law, the plaintiff did not use ordinary care in protecting said wound from further injury or in caring for the same, and that plaintiff is not entitled to recover damages against defendant because of any suffering or physical disability he may have sustained, or will sustain, by reason of his lack of ordinary care in protecting the wound he received while a passenger upon the defendant's train from further injury or aggravation."

From an examination of the instruction of law given by the court, we believe that the court properly and sufficiently instructed the jury what damages in law plaintiff could recover, and the necessary care to be given passengers by the defendant. It was for the jury to determine whether the resultant injury complained of was due to the negligence of the plaintiff, and upon this point the jury was fully instructed. The reason given by the court in refusing to give the instruction, because of having already properly instructed the jury

on the point of law asked by counsel for appellant, was sufficient to warrant the court in refusing to give said instruction, and no prejudicial error was committed thereby.

10.    The same observation, as to appellant's ninth assignment of error, we believe correctly applicable to the tenth assignment of error, wherein it is alleged that the court erred in refusing to give an instruction which the court believed was already covered and defendant's rights protected in other instructions given by the court.

11.    Counsel for appellant assigns as error the court's refusal to grant the following instruction: "The jury are instructed the refusal of the plaintiff to submit to an examination of his entire person by the physicians of the defendant, after an order by this court to that effect directing him to submit to such examination, may be considered by the jury in passing upon the question as to the extent and nature of plaintiff's injuries.  The question whether plaintiff's refusal to submit to such entire examination was in good faith, and not for the purpose of defeating the ends of justice, or whether such refusal was for the purpose of preventing a disclosure of the truth, and thus defeating the ends of justice, is solely for the jury to decide." The court had already passed upon the question in refusing to order the examination, other than as offered, and exceptions duly taken by counsel for appellant. Any refusal to allow such examination on the part of the court, if it was error, the same could have been corrected on appeal.  We having decided that the court properly refused to allow the examination asked for by appellant, due to the fact that it had had all the reasonable opportunity of examination that was necessary, or could have in all fairness asked for, and that the court did not abuse its discretion in denying another examination, we believe disposes of this assignment of error, and which, we are of the opinion, did not prejudice the substantial rights of the defendant. (*Louisville & N. R. Co.* v. *McClain*, 66 S. W. 391; *Gulf Co. & S. F. R. Co.* v. *Pendery*, 14 Tex. Civ. App. 60, 36 S. W. 793.)

12.    Appellant complains, and assigns as his last assignment of error, that the court erred in instructing the jury that if they believed from the evidence that plaintiff was suffering

from varicose veins in the left leg, or from other disability, previous to the accident complained of, and that such varicose veins or physical disability were aggravated by the injury complained of, the plaintiff would be entitled to recover such amount as would compensate him for the aggravation of the previous disability through the injury received. The court, upon its own motion, instructed the jury as follows: "The jury are further instructed that if they believe from the evidence that previous to the accident complained of the plaintiff was suffering from varicose veins in the left leg, or from any other physical disability, and that such varicose veins or physical disability were aggravated by the injury complained of, and that the plaintiff used reasonable care in attending and treating said injury, then the plaintiff would be entitled to recover such an amount as would compensate him for the aggravation of the previous disability through the injury received."

There is no merit whatever in this assignment of error. The contention of respondent is that Murphy never had varicose veins before the accident. It is as strenuously contended by the appellant, by testimony introduced through depositions, that the varicose veins from which the plaintiff is suffering were of ancient origin and existed a long time prior to the accident. This evidence, introduced for the purpose of proving that plaintiff was suffering from varicose veins at the time and long prior to the accident, was brought into the case by the defendant, and was one of its theories advanced in order to minimize the amount of damages they admitted plaintiff was entitled to. Conceding, for the purpose of argument only, that the plaintiff was afflicted with varicose veins prior to the accident, and that, by reason of the injury, the veins were aggravated, there is nothing in the law which would prevent plaintiff from recovering such damages as the jury might deem plaintiff entitled to because of the aggravation of the veins through an injury received. The following rule in 13 Cyc. p. 31, which is borne out by a multitude of authorities, we believe properly states the law: "One already diseased.—Where one already diseased has suffered from personal injury, the mere fact of personal condition will not deny

him all 'the damages suffered from the accident. The rule remains the same whether the injury supervenes and proximately results in the defendant's wrong, or whether the disease existed at the time of the injury and was aggravated by it."

The question of pleading raised by the appellant, with reference to this assignment of error, we believe is properly disposed of in the case of *Campbell* v. *Los Angeles Traction Co.*, 137 Cal. 565, 70 Pac. 624, wherein the court says: "The only other question calling for special notice arises on an instruction given the jury, which the appellant claims to have been erroneous, and which is as follows: 'If you find from the evidence that the plaintiff received the injury complained· of by reason of defendant's negligence alleged in the complaint, and at the time of the reception of said injury the plaintiff was suffering from some disease, and you further find that said injury hastened the development of such disease, and that thereby, without the fault of the plaintiff, her present condition, whatever you may find that to be, has resulted from such injury, then I instruct you that the plaintiff is entitled to recover such damages as you may determine she has sustained from the injury.' This instruction was not erroneous. The main objection to it is that this instruction allows the jury to give special damage, which was improper, because such special damage was not averred in the complaint. The evidence as to the woman having a particular disease was introduced by appellant, and not by respondent; and therefore it is not clear how, under any view, the question of pleading arises. But waiving that question, the thing involved was not special damage, requiring special averment, although appellant cites two or three cases which·seem to support its contention.

"Physical suffering and injury caused by violence to the person are the natural and direct consequences of the wrong, and are not in the nature of special damage, which must be particularly averred. The latter arises only where damage is sought 'for indirect consequences which are not the natural and usual result of the wrong, as loss of service, particular damage caused by slander, etc. The liability of one who commits an assault and battery or other unlawful violence to

the person of another is not to be measured by the physical strength of the party injured, or his capacity to endure suffering. One of weak physical structure, or small vitality, or in ill health has as much right to protection from violence as a robust athlete; and in either case the physical injury, the bodily harm, which is actually caused by the violence, whether he be strong or weak, healthy or sickly, is the natural consequence of the wrong, and need not be specially averred. The law on this subject is correctly stated in Sedg. Dam. (8th ed.) 111, as follows: 'For instance, an assault and battery may directly result in pain and bruises, and in the aggravation of a preexisting disease. These are the direct results of the battery. It may also result in the loss of time, expense of medical attendance, and loss of a business situation. These are perhaps direct results of the illness caused by the battery, but they are the indirect results of the battery itself.'"

A thorough review of the transcript in this case discloses a fair and impartial trial, and that appellant's substantial rights were protected at all stages in the proceedings. The jury, who were the judges of the amount of damages which were proper to be awarded to the plaintiff under the evidence adduced and the instructions given by the court, evidently believed that plaintiff suffered a severe injury, and believed that $7,500 would reasonably compensate him for the injury he had suffered. Considering the robust constitution of the plaintiff before the accident, and the injury received from which he is suffering, and will probably suffer for many years to come, we are of the opinion that there is nothing unreasonable in the verdict.

The judgment and order of the lower court denying a new trial are affirmed, with costs taxed against appellant.

It is so ordered.