Margaret Stringert, Appellant, *v.* The Township of Ross.

[Marked to be reported.]

*Negligence—Evidence—Township—Highway.*

Where a person is found dead, with his neck broken, on a township road, and there is nothing to show how the accident occurred, or that the death was occasioned by the negligence of the township, damages cannot be recovered from the township.

In an action against a township to recover damages for the death of plaintiff's husband, it appeared that the deceased was found dead, with his neck broken, on a township road leading to a city. The deceased, who had been afflicted with asthma and heart disease, left his home in the morning in a one-horse wagon loaded with baskets which were to be sold in the city. When found in the afternoon there was nothing in the wagon but two sacks and two kegs of beer. The seat of the wagon had springs under it, and was raised about a foot above the wagon. The wagon was discov-

ered in the road with the hind wheels in a rut about twelve or fifteen inches deep, intended to convey surface water from one side of the road to the other. The evidence tended to show that the rut had been worn deep by wagon wheels. The horse was standing still. The body of the deceased was lying in the road with the head toward the wheels, and feet towards the fence, the head being distant about eighteen or twenty inches from the front wheel. The road had been much traveled, and no accident had ever before occurred at this point. The deceased's body was discovered about four o'clock in the afternoon of a dry and pleasant day. *Held*, that a compulsory nonsuit was properly entered.

Argued Nov. 10, 1896. Appeal, No. 50, Oct. Term, 1896, by plaintiff, from order of C. P. No. 1, Allegheny County, June Term, 1891, No. 550, entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. STERRETT, C. J., McCOLLUM and MITCHELL, JJ, dissent.

Trespass to recover damages for the death of plaintiff's husband. Before COLLIER, J.

The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it refused to take off.

*Error assigned* was in not taking off nonsuit.

*James Fitzsimmons*, for appellant.—The case was for the jury: Sutter v. Young Twp., 130 Pa. 72; Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276; Humphreys v. Armstrong County, 56 Pa. 204; Dean v. New Milford Twp., 5 W. & S. 545; Plymouth Twp. v. Graver, 125 Pa. 24; City of Altoona v. Lotz, 114 Pa. 238; Borough of Easton v. Neff, 102 Pa. 474; Shaw v. Philadelphia, 159 Pa. 487; Chilton v. Carbondale, 160 Pa. 463; Erie v. Schwingle, 22 Pa. 384.

*Geo. H. Quaill*, for appellee.—A person who knows a defect in a highway and voluntarily undertakes to test it, where it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect: Wharton on Negligence, sec. 440; Forks Township v. King, 84 Pa. 230; Erie City v. Magill, 101 Pa. 616; Pitts. S. R. R. Co. v. Taylor, 104 Pa. 306; Fleming v. City of Lock Haven, 15 W. N. C. 216;

Crescent Township v. Anderson, 114 Pa. 643; Barnes v. Sowden, 119 Pa. 53; Robb v. Connellsville, 137 Pa. 42; Hill v. Tionesta Township, 146 Pa. 11; Burns v. City of Bradford, 27 W. N. C. 201; Lynch v. City of Erie, 151 Pa. 380; Haven v. Bridge Co., 151 Pa. 620; Harris v. Commercial Ice Co., 153 Pa. 278; Winner v. Oakland Township, 158 Pa. 405.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

In the afternoon of November 8, 1890, the dead body of the plaintiff's husband was found lying in one of the public roads of the defendant township, leading to the city of Allegheny. The body was discovered at about 4 o'clock·P.M. The day was dry and pleasant. The deceased was riding in a one-horse wagon, which had been loaded with willow baskets when he left home in the morning, and which were intended to be, and no doubt were, disposed of in the city. When found in the afternoon there was nothing in the wagon but two sacks of feed and two kegs of beer. Upon examination of the dead body it was discovered that the neck was broken at a point which probably caused instant death, according to the testimony of the attending physician. No person saw the accident, and no witness was examined who gave any testimony whatever as to the facts of the occurrence. This action was brought by the widow to recover damages from the township for the loss of her husband. At the trial, upon the completion of the plaintiff's testimony, the court granted a compulsory nonsuit, upon the ground that there was not sufficient evidence to hold the township liable. The propriety of this action is before us on appeal.

Of course it was necessary for the plaintiff, in order to establish a cause of action, to show not only the death of her husband, but also that his death was occasioned by the negligence of the defendant: 93 Pa. 449; 97 Pa. 70; 102 Pa. 474. As there was no testimony to the facts which resulted in his death, there is a serious practical difficulty in the way of the plaintiff in establishing her cause of action. There was evidence given as to the condition of the road at the place of the accident, and it was of such a character that a jury might be justified in finding that it was in a condition of bad repair, which was due to the negligence of the defendant. But in order to recover it must be further shown that the negligence of the defendant in

this regard was the producing cause of the death. If, taking all the facts together, a justifiable inference could be drawn that the negligent condition of the road was the cause of the death, there was enough to carry the case to the jury. But the difficulty in the case is that the plaintiff's contention in this regard requires a succession of inferences without any actual testimony to support them. The best that can be said in support of the plaintiff's theory is that the deceased may have been traveling at a good rate of speed, that the wagon was driven with some rapidity into the hole or ruts which were proved to be there, that it might have been so much jolted by the sudden fall of the wheels into the hole or ruts that the body of the deceased may have been forcibly thrown from the wagon, and that the body may have so fallen as that the head was foremost, and received the shock of the blow, and that in fact the head did strike some hard substance, as the wheel or the hub, or the ground, with such force as to cause the dislocation of the neck. Now if all these things had been proved by testimony there would have been sufficient evidence to carry the case to the jury, because a verdict could then be founded upon proof, and not upon mere inference. But there was no testimony upon any of these subjects, and the question then arises, whether the inference that the death was caused by the negligence of the defendant is the only inference that can be drawn from the facts that are in evidence. If it is not, and other inferences may be drawn from the same facts, then there is nothing for the jury but mere guesses or conjectures, and upon these no verdict can be founded.

Evidence was given which tended to show that at the place of the accident there was a depression in the surface of the road, evidently intended to carry surface water from one side of the road to the other. This space was about four feet wide and seven feet long. It was depressed about fifteen inches below the surface of the road. There was some confusion in the testimony as to there being any ruts. Some of the witnesses called the space above referred to a rut, but another said there were two ruts running lengthwise in the road, and parallel with its direction, and across the water table, and there was some evidence that these ruts were about fifteen inches in depth. Dr. Linley, one of the witnesses, said nothing about any water

table or depressed surface of the road, but described only two longitudinal ruts, one on each side of the road, about twelve or fifteen inches in depth, and said the ground between them was solid.  He traveled the road a great deal, by day and night, and said : " Q. And how did you go when you were going along there ?  A. I sometimes slipped into the rut, and at other times I would drive to the south side in the mud.  Q. And by going to the south side you avoided the rut?  A. Yes, sir."

Jacob Pool, one of the two persons who first discovered the body says nothing of any parallel ruts, but speaks only of the water table or depressed portion of the road, and says : " It extended very near clear across the road.  It was easy seven feet wide and about four feet long.  That is you know four feet the way the road was running, and across the road, seven feet. . . . The hind wheels of this wagon were in that hole." On cross-examination, speaking of this same hole, he was led by the questions put to him to call it a rut.  Thus " Q. The front wheels had got up out of the rut?  A. Yes, sir.  Q. And the hind wheels were still down in the rut ?  A. Yes, sir.  Q. Did this rut extend all the way across the road ?  A. Very near. Q. What was it that caused this rut?  A. The travel of the wagons running down into the rut wore a hole there. . . . Q. How could you avoid this rut on the road at that place ? A. You couldn't avoid it at all; you had to go through it; you had to go through one part of it anyhow."

John Smith, the other of the two persons who were together when the body was found, describes the " hole," as he calls it, just about as Pool did.  He also spoke of it as a rut in answering questions on cross-examination, but he described a hole. He was asked, " Q. Then this rut as I understand it began on the upper side of the road, on the right hand side as you were going out, and extended over about seven feet ?  A. Yes, sir. . . . . Q. And what was it that caused this hole in the road? A. I guess it was just a little rut happened there and the wheels kept working down.  Q. It was originally a soft place and the wheels kept gradually working it down?  A. A little soft I guess.  Q. The rut or hole you say was dry at this time ? A. Yes, sir . . . . Q. The front wheels were clear up out? A. Yes, sir.  And the hind wheels were down in the rut when you saw it?  A. Yes, sir."  Andrew Smith spoke of it as a hole

and a rut indiscriminately, but evidently meant a hole.    Peter Snyder, described it as a hole, saying, "it was kind of on a slope across the road," and, "it was not quite square across the road.    The upper wheel would pull out of the wash just about the time the lower one would go in.    Q. You have crossed it as you say?    A. Yes, sir, I crossed it about twice a week always, sometimes three or four times, but twice a week always, when I done the marketing.    Q. Was there anything there to prevent you from crossing; that is to deter you from crossing,—the appearance of it?    A. No, sir; I always got over it pretty good . . . . there was a little offset, there was a kind of water table along there, you would have to drive into the water table, and there was a little bank I suppose that high (indicating), that is where the fence stood on, you would have to drive against that bank.    Q. Then that bank would be about fifteen or eighteen inches?    A. No, sir, it was not over ten inches."    Archibald Downey described it as a hole that reached nearly across the road and about fifteen inches below the surface of the road. Chris. Rody described it in the same way, and all the witnesses said it was a much traveled road, that the hole was gradually worn down by the wagons, that the road was almost level for a considerable distance on both sides of it, that it was easily seen at a considerable distance before reaching it.    All the witnesses who spoke as to the position of the wagon and horse said the horse was standing still, and was attached to the wagon, and that the front wheels of the wagon were up out of the hole, and the hind wheels were in it, when the dead body was found. The body was lying in the road with the head towards the wheels and feet towards the fence, the head being distant about eighteen or twenty inches from the front wheel.    One witness said the brake was on.    Pool said, "The road was not to say muddy, and it was not dry on each side of the hole; the hole was a little bit sloppy; there was no water in it; it was kind of soft mud."    All of these conditions are not at all unusual on country roads, and accidents resulting from such a situation are of extremely rare occurrence.    One witness, Pool, was asked, "Q. Did you notice the sides of the hole, whether there was any indication of the wagon having been moved back and forwards?    A. Well, yes.    You couldn't tell on the hind wheels, you could on the front wheels though, where the horse was try-

ing to pull out, and he would get out maybe a little piece and then drop back in again. He couldn't make it."

How was the death of the plaintiff's husband caused? Nobody knows. In order to impose liability on the township it must be established by affirmative testimony that the condition of the road caused his death. If such an inference only could be drawn from the facts in evidence, the jury might be authorized to infer and find that such was the fact. But to justify such a conclusion it must be inferred that the wagon was jolted with sufficient violence to throw the deceased out of the wagon. But no fact is shown sufficient to authorize such an inference. It would be necessary that it should be shown that he was traveling at such a speed as might produce such a jolt. There is no such proof however, and there is no alternative but inference without proof. Considered in that light it must be observed that no reasonably prudent person would drive his wagon into such a hole or depression at any rate of speed greater than a walk. If he did he would thereby contribute to the production of a serious jolt, and hence be at fault himself, and this is not to be presumed. The inference therefore is, in the absence of evidence to the contrary, that the deceased drove into the hole on a walk, and if he did this, there could not be a jolt of any force. It is difficult to understand how the theory of a forcible jolt can be reconciled with the inference that the deceased performed his legal duty. And this difficulty is vastly increased by the positive testimony of all the witnesses, that there was constantly a very great amount of travel over this road and through this hole or depression. Dr. Linley traveled it constantly by day and by night, and never had any difficulty at the hole. Several of the other witnesses traveled through it every week, and never met with any accident. Weighing the question then by the affirmative testimony upon this particular subject it must be conceded that the enormous preponderance of evidence, indeed the whole of it, is that the ordinary travel over this part of the road could be, and was, conducted in perfect safety. There is nothing, therefore, to be established by mere inference to the effect that a severe jolt caused the deceased to fall from the wagon. This however is only one branch of the subject. John Stringert, son of the plaintiff and her husband, testified that his father had been afflicted with asthma

and heart trouble.  He was asked, " Q. Wasn't he (the deceased) troubled with asthma?  A. Yes, sir.  Q. Didn't he have some heart trouble also ?  A.  Well he was troubled with heart trouble, but we hadn't noticed any on him I guess for ten years.  Q. How old was he at the time he was killed ?  A. Sixty-eight as far as I know."  It is well known that sudden deaths from heart failure in cases where it was least expected are constantly occurring, and reports of them can be seen almost any day in the newspapers.  Of late years they appear to be more numerous than formerly.  In this case the presence of the disease was known, though recent indications were not observed. Now the question is, what produced the fall of the deceased? The best that can be said in favor of the plaintiff's recovery is that it may be inferred that the fall was produced by a severe jolt in going through the hole in the road.  But it might also have been caused by a sudden attack of heart disease.  It might also have been caused by the deceased falling into a doze and losing his balance, or from a sudden attack of apoplexy, or by his having taken too much stimulating refreshment.  Or he might have fallen in an attempt to leave the wagon in order to relieve the horse of his weight in trying to pull the wagon out of the hole, as was testified to by the witness Pool.  The witness Smith said the wagon had a seat with two springs under it, and it was raised about a foot above the wagon.  From such a position any of the causes named might easily have produced a fall.  All the possible causes suggested were quite as probable as the theory of a jolt, and it therefore follows that something more than mere inference must be found to support the plaintiff's claim.  There must be some kind of definite facts proved by testimony, in order to justify the finding of a jury that the fall was produced by a jolt resulting from the condition of the road.

In the case of Huey v. Gahlenbeck, 121 Pa. 238, we held that one who is injured when lawfully upon the premises of another, but does not show either the direct cause of the injury or that it occurred through the negligence of the defendant, is not entitled to recover damages for the injury.  In this case the plaintiff was lawfully in the warehouse of the defendant, and was standing near the well of an elevator.  He testified that while he was standing there something came down and struck him causing him to fall down the elevator shaft and be injured.

He could not tell what it was that struck him and nothing was found on the premises displaced or out of position.   PAXSON, J., delivering the opinion said, " But the plaintiff alleges, and so testified upon the trial below, that he was injured by something falling upon him.   He said ' I saw the elevator when I went into the back part of the place; and when I got near to the elevator something came down and struck me and scraped my face, and I fell down upon my back.'   The witness was not able to say what it was that struck him ; he did not see anything nor did any other witness notice an article of any kind in the building out of place.   There was no evidence that the boxes and parcels, with which the place was filled, had not been piled up with proper care, or that any of them had fallen down. . . . The mere fact that something fell on the plaintiff's head, without more, is not evidence of negligence on the part of the defendant.   He cannot be convicted of negligence and compelled to pay a large sum of money without proof."   That case goes farther than is necessary in this.   The plaintiff was struck by something according to his own testimony, and in consequence of the striking he fell into the elevator shaft.   But because he could not tell what it was that struck him, and nothing was found displaced, we held he could not recover, because there was not sufficient testimony to convict the defendant of negligence which produced the injury.   Just so here, but in a greater degree.   The plaintiff's husband was killed by a fall from a wagon, but there was no proof as to what produced the fall. The conjecture of a cause is not sufficient, especially when other causes for which the defendant would not be responsible might just as well have produced the fall.

Judgment affirmed.