## COOK v NEW YORK CENTRAL RD CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15,628.   Decided Dec 14, 1936

Rufus Day, Cleveland, and F. J. Cook, Cleveland, for plaintiff-appellee.

Paul Lamb, Cleveland, for defendant-appellant.

### OPINION

By LIEGHLEY, PJ.

On April 1, 1932, the defendant spotted a freight car loaded with ties, weighing about twenty-six tons, on the sidetrack or spur of The Pearl Road Lumber Company. This spur track had a grade toward the main track of a little more than one percent. The conductor says that he set the hand brake on the car and that he blocked one end and the brakeman blocked the other end of the car each with a piece of 2x4 under the wheels.

This car stood in this position until the morning of April 4, 1932, when the decedent, Bauman, Anton his partner and two helpers, approached the car, broke the seal and the helpers entered with the intention of throwing out the railroad ties. Immediately upon beginning the work it was discovered that they had not brought with them tie-tongs to aid in unloading. The decedent left to obtain tie-tongs and returned in a few minutes and handed the tongs to the helpers inside the car with the statement that when they wanted to move the car they knew what to do. He thereupon started to walk away toward the down-grade end of the car and within a few moments the car began to move. The two helpers jumped from the car and one ran up the ladder to the top of the car and to the other end, set the brake and stopped the car. He testified that it required four or five turns to do so. Thereupon the body of Bauman was discovered about fifteen feet from the end of the car with his body outside of the rail and his head inside, all but severed from his body.

Suit was instituted by plaintiff to recover damages for wrongful death. The trial resulted in a verdict and judgment for plaintiff. Appeal was taken to this court to reverse said judgment on questions of law.

When Bauman and his companions approached said car they had a right to assume that the defendant had discharged its duty to securely spot this car and from the evidence it may be concluded that they proceeded upon that assumption. Unless there was some apparent condition present to indicate the contrary, they were not bound to anticipate that some vicious stranger had interfered and molested the car.

The plaintiff cited and relies upon the case of Railroad v Rupp, 27 C. C. 212; affirmed by the Supreme Court in 73 Oh St 405. The second paragraph of the syllabus reads as follows:

"2. The jury is warranted in finding that the brakes on a freight car had not been

properly set, or became loosed through the fault of the company, where the evidence shows that while the car was being unloaded on a siding it started down the track, and there is no evidence to show that the brakes had been tampered with either before or after the consignee's employes started to unload the car."

The trial court adopted and applied the rule of this case. This case was affirmed by the Supreme Court at a time when its jurisdiction was not limited to constitutional questions and questions of general and great public interest.

Inasmuch as this car was spotted on April 1st and not approached for unloading until the morning of April 4th, the defendant claims that the jury was permitted to indulge in speculation alone in arriving at its verdict. There is no evidence to explain the exact manner in which the decedent met his death. It is a certainty that the sudden and unexpected moving of this car caught him unaware and killed him. There is no evidence that anyone meddled or tampered with this car during the three days. The defendant says that the verdict can only be justified by piling one inference upon another, contrary to law.

The conductor testified that he set the brake securely and that he and the brakeman blocked the car with two by fours. Anton testified that when he arrived there on the morning of April 4th the car was blocked with two by fours. No such timbers were found after the accident. Instead, there was offered in evidence two pieces of wood, one a board less than an inch in thickness and the other a thicker piece of wood in a state of disintegration, said to have been picked up there after the accident, one being on the rail. If the jury was bound to believe the conductor and the brakeman then the claim of defendant would be tenable. However, in the light of all the proof in the case, it may very well be that the jury did not believe their testimony and thought that they were mistaken in claiming that they did what they said they did to securely spot this car.

In the Rupp case a car was spotted on a spur track where it had stood perhaps several hours and perhaps a day and while a workman was in the process of unloading, the car started and rapidly ran down to and upon the main track and overturned. The workman jumped and was injured. Liability to the plaintiff in that case did not seem to be strenuously controverted, but it was sufficiently contraverted to inspire the pronouncement of the rule found in the syllabus. It was made an issue also in that case as to whether the railroad company or the manufacturing concern was liable to plaintiff.

The jury in this case may well have concluded that some effort was made to securely spot this car but that it was not effectively done. True it stood there for almost three days but the jury may have decided that it was not so securely fastened that it would remain stationary in the event of activities incident to throwing the ties about and unloading the car.

As stated in the opinion at page 215, in the Rupp case:

"* * * and it would seem to be a fair and just conclusion in the case, and one at which the jury might properly arrive, that the brakes had in some manner become loosened, failed to hold, had not been properly set and failed to perform their duty; and that the car went down the track, without any negligence on the part of the tinware company or the man in the car."

In view of the fact that there was no evidence to show that anyone meddled or tampered with this car while it stood on that spur track, it seems to us that it was clearly a question for the jury to decide. And in view of the conflicting proof and proof that is irreconcilable with the events of that day, it seems that the verdict of the jury should be sustained upon the apparent fact that the jury did not believe the conductor and the brakeman or believed that they were mistaken. If the jury had believed them, a different verdict necessarily would have resulted.

Wherefore the judgment is affirmed.

Levine, J, concurs in judgment.

Terrell, J, dissents.

### DISSENTING OPINION

By TERRELL, J.

The defendant railroad delivered a boxcar loaded with railroad ties to plaintiff's decedent and his partner as consignees upon a private railroad siding. This siding had an incline less than one and a half percent. Three days after the delivery while the employees of consignee were unloading the car, it started down grade and was stopped by one of the employees who climbed upon the car and set the brake

by turning the wheel four or five times, the car having gone a distance variously estimated about fifty feet to sixty feet or even ninety feet. When the car was brought to a stop it was then discovered by the employees that plaintiff's decedent was lying upon the track about fifteen feet from the rear end of the car, dead, with his body outside the rails and his head inside the rails. There was a pinch-bar three feet from his body inside the rails.

Plaintiff, as administrator, filed an action for wrongful death, claiming that the railroad company was negligent in spotting the car in that it failed to properly secure the brakes or properly block the wheels in a secure manner and that as a proximate cause of this negligence the car started to move down the incline and ran over and killed decedent. Judgment was entered upon a verdict in favor of plaintiff and defendant now asks that the judgment be reversed.

In spotting a car upon an incline siding there is a duty upon the railroad to use due care to properly secure said car by the use of brakes or blocks or both so it will not roll down the incline. A violation of this duty is negligence.

One of the controversies between the parties here is whether or not there is any evidence in the record to make proof of such negligence. It is plaintiff's contention that the starting of the car is proof that due care was not used to fasten the brakes when it was spotted and that certain pieces of wood found on or near the track where the car originally stood had been used to block the car and these blocks were insufficient. Plaintiff has no direct evidence as to the manner in which the car was secured when originally spotted. The train crew which spotted the car testified positively that the brakes were properly set and that proper pieces of two by fours were used to block the wheels. The jury within its province may not have believed the testimony of the crew as to the care used in spotting the car. It is undisputed that the unloading of this car began three days after it was spotted. The car was not moved in those three days. It was therefore apparently secured against the influence of gravitation for three days before it started in the process of unloading. Plaintiff infers from this fact of starting, that three days prior thereto the car was not properly set. Is this inference justified? To sustain plaintiff in this contention our attention is called to the case of **W. & L. R. R. v Rupp, 6 O.C.C. (N.S.) 272,**

affirmed without opinion in **73 Oh St 405.**

In the Rupp case there are some facts quite similar to the present case. There an employee of consignee was unloading car which had been spotted on an incline. In the process of the work the car started. Plaintiff jumped out and broke an ankle. A verdict in his favor was sustained. But that case differs from the case at bar in several respects. The court there found that the car was probably spotted the very day of the accident. I quote from the opinion of the Court: "One of the witnesses thought they had blocked it, others not. The weight of the testimony seems they had not." There was evidence on behalf of the plaintiff by a witness in the boiler room that he saw the car spotted, that he had it under his observation until the time the unloading began and that no one interfered with or molested the car during that time, (shown by the record of the case in the law library). From this evidence it could be fairly inferred that since no change took place from the time of the spotting until it started, that it had been insecurely spotted in the first place. But in the case at bar it is admitted the car was blocked and three days elapsed from the time of spotting and there was no evidence whatsoever that no change had taken place during that time. This car was in the possession of plaintiff's decedent on a private siding for three days awaiting his pleasure, to have it unloaded. It would be an unreasonable rule to charge the defendant with the duty of keeping this car, while it was on the private siding, under constant observation to prevent someone from molesting it.

Liability was held in the Rupp case because there was evidence to show that the brakes had not been tampered with. Unfortunately in the second syllabus the Circuit Court uses this language:

"2. Jury warranted in finding brakes improperly set. When—

"The jury is warranted in finding that the brakes on a freight car had not been properly set, or became loosened through the fault of the company where the evidence shows that while the car was being unloaded on a siding it started down the track, and there is no evidence to show that the brakes had been tampered with either before or after the consignee's employees started to unload the car."

Apparently the negative was misplaced inadvertently in the latter part of the syl-

labus. It would have been in accord with the facts and a better statement of the law if it had read "and there is evidence to show that the brakes had not been tampered with either before or after the consignee's employees started to unload the car."

From a reading of this syllabus it would appear that the court placed the burden upon defendant to prove that during the time the car stood on the siding it had not been tampered with. That would place a burden upon the defendant to keep a twenty-four hour watch upon this car until the consignee at his leisure decided to unload it. This seems to be an unreasonable burden upon the defendant. It would appear more reasonable that before the plaintiff should be entitled to avail himself of an inference that the car had not been properly secured when it was spotted in the first place, he should prove that no change in the brakes and setting of the car had occurred before it started to move. Most anything can happen to a car upon a private siding in three days. Without any evidence on behalf of the plaintiff that no change took place from the time the car was spotted until it started, it may just as reasonably be inferred ·that someone tampered with the brakes or blocks after the car was spotted and within the three days.

From the facts submitted another inference may be drawn in favor of the defendant. That is, that since the car had stood three days without rolling down it was securely fastened at the time it was originally spotted.

The mere fact of an accident does not raise a presumption of negligence. There is no direct testimony of any act of negligence on the part of defendant. In the case of **Huff v Austin, 46 Oh St 386,** the court stated:

"The existence of negligence is an affirmative fact, and the presumption is, until the contrary appears, that every man will perform his duty * * *. In view of such presumption it is the general doctrine, as sustained by a great weight of authority, that when negligence is the ground of an action, it devolves upon the plaintiff to trace the fault for his injury to the defendant; that he must give some affirmative evidence .from which there may be a logical inference of negligence, and the mere happening of an accident will not be sufficient evidence of negligence to be left to the jury."

Where two opposing inferences may be indulged in, which shall prevail? This question has been determined in Ohio in the case of **L. S. and M. S. v Andrews, 58 Oh St 426,** wherein the court stated:

"In the absence of direct evidence in its support, an allegation that one sustained injuries by reason of the negligence of the defendant, is not sustained by proof of circumstances from which the fact that his injuries were so sustained is not a mere natural inference than any other."

So that from the facts in this case, where there was a duty upon the plaintiff to prove his allegations by proper and suitable testimony, the failure on his part to introduce any direct evidence thereof would not warrant the jury to adopt an inference favorable to the plaintiff where there is also an inference of equal probability in favor of defendant.

In re Wallace's Estate 220 P. 682 (Calif. 1923) the court said:

"An inference cannot be said to be established by circumstantial evidence unless the circumstances relied upon are of such a nature and so related to each other that it is the only inference that can be fairly and reasonably drawn from them, and if other inferences may be drawn from the facts in evidence, the evidence does not support the inference sought to be deduced from it."

Where several inferences may be drawn from circumstantial evidence the selection of one in preference to the others is pure conjecture.

In the case of Puckhaber v S. P. Co., 64 Pac. 480, the court said:

"The question then arises whether the inference that the death was caused by the negligence of defendant is the only inference that can be drawn from the facts that are in evidence. If it is not and other inferences may be drawn from the same facts, then there is nothing for the jury but mere guesses or conjectures and upon these no verdict can be founded."

There is another branch of this case which presents serious consideration. Is there any evidence in the record which would warrant a conclusion that defendant's negligence, if any, was the proximate cause of decedent's death?

No one saw how decedent met his death.

The contention of the parties in respect thereto are based entirely on inferences. Decedent was last seen by the two employees when he handed in to them the tie tongs. He then moved away from the door of the box car. Which direction he went or where is not in the record. His body was next seen fifteen feet behind the car when it was stopped by the employee.

Plaintiff's theory, based on inferences only, is that as the car advanced, some part of the car, maybe the door, came in contact with his body, maybe his shoulder, throwing him down and under the car so that the wheel ran over him. This theory is alleged in the petition. There is no evidence of this theory in the record except that he handed in the tie tongs, moved away from the car and later was found dead. It is apparent that the car ran over him. The question is, how did he get under the car? Defendant's guess is as good as plaintiff's. Defendant's theory is that decedent was getting ready to move the car after he handed in the tie tongs and that he was using a pinch bar in moving the blocks from under the wheels and that he thereby released the car and caused it to run over himself.

Let us examine the undisputed evidence that defendant claims to support this inference. When decedent and his partner and the two employees got to the car they broke the seal, the two employees got into the car and started throwing out ties and found they needed the tie tongs to do this work. Decedent then walked to the home of his partner, over a mile away, to get the tools. In the meantime the employees continued throwing out ties. Decedent returned, handed in the tongs and moved away. Three feet from his body and inside the rails was found the pinch bar. This pinch bar and the tongs had been at the home of his partner. No evidence appeared in the record that anyone saw the pinch bar on the scene before it was found on the track near his body. A pinch bar is used to pry up the wheels of the car in order to move it along the track. It was the plan of decedent to have the ties unloaded in a pile, then advance the car, which is done with the aid of the pinch bar, and make another pile, probably several piles along the track. Blood was found on the rear trucks and springs of the car.

Defendant contends that from this undisputed evidence a reasonable inference follows that decedent got beneath the car for the purpose of removing the blocks with the aid of the pinch bar and released the blocks in preparation for moving the car forward, having theretofore released the brake. This inference of defendant opposes the inference of plaintiff. Which should prevail? The burden of proof is on the plaintiff not only to prove actionable negligence of the defendant but also to prove that said negligence proximately caused the death.

In Foss-Schneider Brewing Co. v Ulland, 97 Oh St 210, the first syllabus reads as follows:

"In an action for damages claimed to have been caused through the negligence of the defendant, it is not error for the trial court to direct a verdict for the defendant where the plaintiff offers no evidence tending to prove either that the defendant was negligent in the particulars averred in the petition, or that the negligent acts complained of were the proximate cause of the injury."

Again we refer to the Andrews case, 58 Oh St 427. In this case a brakeman had been assigned to the head end of a train to watch the rear end to see if it had parted while descending the grade. He was required to lean out in order to see the rear end thereof. He was last seen alive shortly before the locomotive reached the bridge standing on the platform between the engine and tender. Later he was found dead alongside the track. Plaintiff's theory of the case was that as he leaned out to see the rear end of the train his head came in contact with an obstruction which the railroad negligently maintained. In the opinion, the Court assumes the negligence of the railroad. Plaintiff claimed that his theory was supported by an inference that his head was struck against the negligently maintained obstruction. No one saw just what happened. The court held that a natural inference also was that he fell from the train and struck his head which caused his death. It therefore followed that plaintiff did not prove that the negligence of the railroad was the proximate cause of his death.

This case is directly applicable to the case at bar. Plaintiff's inference of negligence and plaintiff's inference of proximate cause are not the more probable inferences from the facts shown.

In the work of Jones on Evidence, the author states:

"If it appears that the facts and circumstances from which a conclusion is

sought to be deduced, although consistent with that theory are equally consistent with some other theory, they do not support the theory contended for."

Citing Neal v Chicago R. R., 129 Iowa, page 5.

It would appear that the inference contended for by defendant is just as equally consistent with the indisputable facts as the inference contended for by plaintiff.

The syllabus in the case of Neal v Chicago R. R., cited above, is as follows:

"No recovery may be had on circumstantial evidence for the death of a switchman killed on a switch, on the theory that his foot was caught between the rails because of the defective blocking if the circumstances shown are equally consistent with the theory that he slipped on the icy ground and fell in front of the car or that he attempted to board the moving train and fell under it."

In this case, on page 908, it is stated:
"If other conclusions may be reasonably drawn as to the cause of the injury from the facts in evidence, than those contended for, the evidence does not support the conclusions sought to be drawn from it. Verdicts must have evidence to support them and the jury will not be permitted to conjecture how the accident happened. In matters of proof they are not justified in inferring from mere possibilities the existence of facts."

In page 909:
"The jury are not permitted to find material facts without evidence or on mere conjectures as to the truth of one of two equally probable or possible theories having different legal results."

In the case of Puckhaber, cited above, pertaining to the subject of proximate cause, the court said:

"It is a basic element of every right of recovery that the defendant's negligence must contribute to the injury, and must be the proximate cause of the injury. By proof of defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. It is as necessary for the plaintiff to show that the defendant's negligence caused the injury as it is to show that defendant was guilty of negligence or that the party was injured."

In this Puckhaber case there is cited the case of Welch v R. R., 181 Pa. 461, and the following quotation is made therefrom:

"Assuming, as to the general public, that the company was negligent in not operating the gates at night or in not maintaining a flagman at night, or in not keeping a sufficient light this negligence must be so connected with the injury to decedent as to afford a presumption that the negligence caused the injury.

"But how can we presume the negligence caused the injury when there is no necessary connection between the alleged negligence and the injury?

"In this case the jury was permitted to presume negligence on the part of the defendant; then to presume that decedent was lawfully on the railroad tracks and then to still further presume that the defendant's negligence caused the death. The plaintiff was bound not only to prove negligence as to the general public using the crossing but to go further and show that this negligence was the proximate cause of Welch's death. A presumption must be based on a fact or facts, not on a presumption."

There is also cited the case of R. R. Co. v Schutle, 97 Pa. 450, from which the following quotation is taken:

"There was not a particle of proof that either the track or the step had anything to do with his death. For ought that appears, he may have fallen in a fit or for some cause wholly disconnected from either. The case was submitted to the jury without evidence and the verdict has no better foundation than a guess."

There is also cited the case of Stringert v Ross, (Pa. Supp.) 36 Atl. 345, from which is quoted the following:

"But in order to recover, it must be further shown that the negligence of the defendant in this regard was the producing cause of the death. If, taking all the facts together, a justifiable inference could be drawn that the negligent condition of the road was the cause of the death, then there was evidence to carry the case to the jury. Now if all things had been proven by testimony, there would have been sufficient evidence to carry the case to the jury, because a verdict could then be found on proof, but there was no testimony upon any one of these subjects and the question

then arises whether the inference that the death was caused by the negligence of defendant is the only inference that can be drawn from the facts that are in evidence. If it is not and other inferences may be drawn from the same facts, then there is nothing for the jury but mere guesses or conjectures and upon these no verdict can be found."

It is just as reasonable in the present case to infer that decedent got under the car and met his death through his own act as it is to infer that he got under the car and met his death through the act of defendant. Or it may be reasonably inferred that if decedent did not start the car by his own act, that he might have tripped over the pile of ties or something else and have fallen under the car without any act of defendant as a proximate cause intervening. The same inference was made in the Andrews case, 58 Oh St 426, supra.

In the case of Cleveland Railway v Sutherland 115 Oh St 262, at page 265, the court uses this language:

"The facts proven do not indicate that the window of the street car was broken because of any faulty construction, but rather by reason of the application of some extraneous physical force, for the only evidence offered on the subject was that the glass was broken in a round hole about six inches in diameter, 'sort of punched out.' It is quite clear that the breaking of the glass could easily have occurred without any negligence of the defendant. An inference may just as readily be drawn that the window was broken by the act of a third person with which the company had nothing to do. The mere fact that the company was in control of the operation of the car, with a motorman in front and a conductor in the rear, does not warrant the inference or presumption that the breaking of the window at the center of the car, in the manner in which the glass here in question was broken, resulted from the negligence of the company, thus placing upon the company the burden of overcoming such presumption."

This was a case where two opposing inferences could be drawn from the facts. The court held that that did not place the burden on defendant to overcome the inference against it and the inference in favor of plaintiff could not prevail.

In the case at bar it is pure conjecture on the part of the jury as to the negligence of defendant, and as to the proximate cause of the death of plaintiff's decedent.

From the case of **Gerwe v Consolidated Fireworks, 12 O.C.C. 420,** we quote:

"In an action for damages, for injury caused by defendant's negligence, to submit the cause to the jury, the evidence must tend to show that the negligence complained of actually brought about the injury, and the court should withdraw the case from the jury and order a verdict for the defendant where the proof as to the cause of the injury are mere speculations."

The verdict was arrived at by predicating one inference upon another. The jury necessarily inferred the negligence of defendant as there was no direct evidence by plaintiff of the manner in which the car was spotted. Then the jury inferred that said negligence was the proximate cause of the death of decedent without any evidence thereof. This placed upon the defendant the burden of exonerating itself from liability by proving that its negligence, if any, was not the proximate cause of the death, and relieved plaintiff from the proper burden of proof under the law.

"An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence."

**Sobolovitz v The Lubric Oil Co., 107 Oh St 204.**

There was no evidence of the proximate cause of death. Unless aided by the inference upon an inference there was no reason upon which the jury could base a verdict.

In the case of **Gas Company v Brodbeck, 114 Oh St at page 431,** the court again takes up a consideration of the question of basing an inference upon an inference. This was a case where gas had exploded in a basement. Action was brought against the Gas Company for injuries. The court says:

"Again, if the jury might, under proper instructions, have inferred that natural gas was the cause of the explosion, there is certainly no direct evidence in this record that the presence of natural gas in the cellar was due to any want of care on the part of the gas company. Before the gas company could be held therefor, it would

have to be inferred that the presence of gas in the cellar was due to such neglect. This would clearly be basing an inference upon an inference and not compelling a deduction from a proven fact. It is well settled that actionable negligence may not be predicated upon an inference drawn from another inference, but, on the contrary, if negligence is only supported by an inference, such inference must be supported by some fact established by direct evidence."

It is therefore the conclusion of the writer that there is no evidence in the record as a basis for any proof of defendant's negligence, and secondly, there is no evidence in the record as a basis for any proof that defendant's negligence was the proximate cause of defendant's death. From the foregoing considerations it appears to me that the judgment should be reversed.